She was denied Lodi, which is line-of-duty injury status, which caused her... She didn't file all the papers? No, she did file the papers. By June 4, all the papers were filed with medical certification from her doctor, indicating the injury commenced on May 14, and coverage, therefore, should have started that day. But she didn't file them immediately. So to the extent that the claim is for the delay in the pay, that was due to her own delay in filing the papers, was it not? No, it was not. The delay in the pay, Your Honor, occurred in the period of September and October of 2014, months later. Actually, in August, early August, the principal had been advised by a memorandum with Mr. Rodriguez that there was an issue with the Lodi approval, and he, at that point, long after he received the paperwork, continued to deny the Lodi. That's what the record shows. So it was not her delay that caused that consequence. So how much did she have to pay in increased payments as a result? Well, the record indicates merely that she had significant credit issues that she had to rectify. It does not state a sum to answer your question directly. Was she made whole, though, eventually? She was eventually made whole. But the delay, as the record indicates, did cause her to have to extend credit, which is the question I believe Judge Park was referring to. So that's one issue with regard to her adverse action. The other issue is this. She was transferred from a school at her request because she was injured. She needed to go to a new school. She goes to a new school called Gateway. She gets to Gateway. Principal DeMiglia at Gateway essentially immediately says to her, we have nothing here for you to do. Now, under the assignment pattern of a hardship transfer in the New York City school system, the person makes selections, meaning they give choices, but they don't make the ultimate decision. The decision is made by administrators in light of a policy. The policy indicates you're to be sent to a school where you can do your regular assignment. She doesn't have a regular assignment there. She has no assignment there. That period only lasts for about a month, though. Isn't that true? It's true. However, this is the point. That principal, beneficently perhaps, says to her there's an opening in another school. The other school is called Pantoja. The other school has an opening, which, if you look at JA 877 and 878 of your joint appendix, makes clear is something called an absent teacher reserve assignment. An absent teacher reserve assignment is an entirely different assignment than a tenured teacher hardship transfer assignment. But everyone told her she was not on the ATR list. Well, everyone didn't tell her. This is from the Department of Education immediately upon her accepting that position. So everyone didn't tell her that. The union was telling her that. The union was, in fact, wrong, because she was treated precisely that way. She did not get a regular classroom assignment. She was made essentially an itinerant, which is contrary to getting a hardship transfer. Breyer. Yeah, but it's hard for me to see that if these were true situations in the school, that in the school she asked for, there wasn't a full teaching thing, that this should be viewed as an adverse action. I mean, it may have been something that was undesirable for her, but the people did what she asked. I mean, the question of the pay is a serious question. We'll have to examine more. But this, it seemed, it looks as though they did what she wanted. What she wanted in the circumstances may not have been as favorable, but I don't see that our cases make that an adverse action. Well, respectfully, where an individual seeks, as the policy of the district or the employer allows them to seek, an accommodation, a reasonable accommodation. We say the cases of the court. Reasonable accommodation. The cases of the court indicate that a reasonable accommodation, if possible, should be made without an undue burden on the employer. That's the bedrock law in this and every other circuit. In this particular instance, it was the school district, which has a large number of schools, which looks at its schools and says, we have a position in your area where you could teach in that school. Now, the question is, is that going to accommodate your disability or not? Here what they did was they, you're right, they gave her one of the three schools she asked for, but they did not have a position for her in that school. So it's like saying, I'm giving you a reasonable accommodation. However, the reasonable accommodation will not allow you to do your work. It doesn't make any sense, especially where, on this record, there are any number of schools which they could have reviewed for the same purpose, and there's no showing that there is no place for her. This is the placement that she asked for. She doesn't have the knowledge. She asked for several placements, just so we're clear. She selects, she gives three choices. But she doesn't have the knowledge at that moment whether there's a vacancy in that location or not. She just knows that it has an elevator and that it has close parking to the building, so it would, quote, unquote, potentially accommodate her. That's the principle of selection in her mind. It's for the district to determine whether she could reasonably do her work there. And the answer to that is she could not. So now you have a person who's a trained, tenured teacher, who has 12 and 13 years of teaching experience, being told, sit in a room. That's not a reasonable, I'm sorry. So the district can't just grant what she's asking for. It has to go above and beyond that and do what? No. What she's asking for, just so we're clear, is a space where she can conduct her professional career with an accommodation. She's not at, I'm sorry. She listed Gateway as one of three choices, right? As I just explained to Judge Cooler, Gateway had certain attributes which met her needs, her physical and medical needs. But the district knew that Gateway did not have a position for her. It's like saying you're sending someone to an accommodation when you know in advance that accommodation cannot, in fact, cabin them. It's meaningless. So she goes. But then, as I explained, then she's suffered. She suffers another. Judge Calabresi raises the question of whether it's an adverse action. I believe it's an adverse action when you have a negotiated collective bargaining agreement which says you have a right to a reasonable accommodation. That has nothing to do with the absent teacher reserve status. That's another status. She's now effectively transferred to that status where she has no stability of assignment. On a day-to-day basis, she's moved from class to class. That's entirely different than what she bargained for or asked for. So that's the problem. I do think that's an adverse action. And contextually, all of the cases, I understand material deprivation, there's certain jargon. But the case is made clear that if someone's responsibilities are fundamentally changed and they have an inferior assignment, that can be an adverse action. And here, that's what happened. Because she doesn't have a class to teach. Sotomayor, that's something like being on the ATR list is an adverse action? It may not be. Again, you may not have held it, but you didn't have a case where someone had this situation foisted upon them. That's the question. It's not whether abstractly it is. I'm not arguing abstractly it would be. For some teachers, it may be beneficial, because it's used for some teachers rather than discipline, for example. So if a teacher is given that status, rather than being kicked out of the school, it may very well not be an adverse action. It may very well be beneficial. I think in some way you are conflating adverse action and reasonable accommodation. Because adverse action, if she has asked for something, even if it turns out to be less beneficial, it's not an adverse action if she has asked for it. She may be mistaken in asking for it, but if she asks it, it can't be. Whether that's a reasonable accommodation is a different question. But that's the question I'm raising in the EDA context. Well, but you're raising both of them and you're conflating them. Yes, it's an EDA claim. And that's making things a little bit messy. I'm sorry. And we'll have to sort that out. All right. I see my time is up. Two minutes for rebuttal. We'll hear from the city. May it please the Court? I'm Janet Zalian. Please speak into the microphone. Yes, of course. There is, in fact, a conflation here between of adverse action and reasonable accommodation. The transfer, and you can see it page 315 of the record. You may want to look at the PDF because the printed copy is hard to read. But it says that you will be granted a regular program to the maximum extent possible. The purpose of the DOE's policy here is to deal with a large, it has thousands of teachers. It has a large number of teachers, let's say, who are requesting reasonable accommodation. So the reasonable accommodation puts her in one of her preferred locations because of the easy parking and less walking to get to the school. So then it cannot guarantee that they are not required to create a new program for her, a new classroom for her. They are required not to make a perfect accommodation but to make a reasonable one. They have put her in that school. She is still a special education teacher. She will do it to the maximum extent possible. She didn't like it. She also erroneously was led to believe it appears because perhaps the salary code being the same as an ATR because she's being paid through the central office when she's on this hardship accommodation made her think she's in the ATR and they accidentally put her on the email list for the ATRs. But even her union agrees she's not in ATR. And when she decided that she didn't like this assignment, then she went to another school, Antonia Pantoja Prep at the same campus, got not an ATR assignment but a year-long assignment there. So she is not delighted with this accommodation, but it was a reasonable accommodation. And therefore, it's not an adverse action to be given a reasonable accommodation. With regard to the pay issue, the cases, in fact, the district court cited a huge number of cases, indicate that where you have been made whole as you were, it's not an adverse action. Are you made whole if you are paid late? I mean, that's the question. You lose the interest on that money for a certain amount of time. So, of course, if she is made whole, there is no adverse action. And my question is, was she in fact made whole in a full financial sense? And if she was not, was there a good reason based on her behavior because of which there was delay? Well, the reason based on her behavior, first of all, we're talking about a couple of paychecks in September and October of 2014, and she was made whole at the end of October. So is it real? She was given that money at the end of October, two months late. Well, what happened was she had to borrow days from her vacation bank, which is called the Cumulative Absence Reserve, to get her, get paid while she was on leave, while this was pending, and that was really to get paid for the previous spring. Could you be clear on that? She was given money from her vacation bank? Well, she borrowed days, yes. What? She borrowed days from her vacation bank. So that didn't cost her anything? No, it did not. They were put back in her record. They were put back in her record, but it resulted in a — I'm not exactly sure how the mathematics works. Well, it's the mathematics that matter. Right. But in order to be paid, because the delay in approving the leave was not happening at the same time she was on leave. In other words, she's borrowing those days because she's on leave last spring of 2014. In the fall, she goes to her new job. My question is a very simple one. Did she lose interest over a certain period of time, or did she not, because she got money from another pocket, which then got put back in that pocket? I don't think she lost — It's not a matter of thinking. It's a matter of knowing. Well, I don't know. There is, actually, Mr. Sussman did say that it's not an issue of savings account interest. It's an issue of — that apparently she had to take out some credit to pay her bills. But there's no documentation of what that means. She was fully paid by borrowing days from her account, right? Yes. So she — if she had to borrow money, it had nothing to do with this snafu, did it? No. Well, she's claiming that a partial deduction from, I think it's two paychecks, had some impact on her credit, needing to borrow. Was this due, clearly due to her own behavior, so that even if we disagree with a district court saying there was no adverse action, it is something which was justified and doesn't give rise to a suit? Well, there were more documentation that was needed other than the principal's approval. So what she eventually had to do, I guess because she couldn't complete the application easily, she went to get help from the DOE and from her union to complete the paperwork. So there was an issue with her not having all of the paperwork together. It was not simply a form from the principal that was missing in terms of the emails that she was getting sent. So let me be clear. You are saying that it may well have been that the reason for the delay was partly due to her. Yes. But the question is, are we in a position to say that as a matter of law, or is this something that must be decided by the district court if we find that the district court was incorrect in saying that as to this particular, there was an adverse action? Well, first of all, there isn't anything quantified about what her loss was. That doesn't matter. Adverse action doesn't have to be quantified if it is an adverse action. So the first question for us is, was there an adverse action? And the district court said no. If we find that there was, even if it wasn't quantified, then we have to see whether this was justified and whether that justification was sufficiently clear that we can decide it or whether we have to send it back. And, no, the fact that a salary was delayed may or may not give rise to an adverse action. And I'm just trying to find out from you what actually happened. Well, what happened as far as her submitting the paperwork late was there was a additional documentation other than the thing that purportedly gives rise to her cause of action here.          Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. So you are saying that she, that the delay in salary was due in part to documentation that she had not sent? Yes. And what was that documentation? The forms are a little hard to, I mean, the district court describes it in the decision. I can't actually remember because the sort of the acronyms are not memorable right now, but there are additional documentation that they had requested from her. And I just want to make it clear that the court is also, that the plaintiff is also not. I'm going to ask you in a few days to submit to us a brief explaining specifically what the forms that were due, would you be able to do that? Absolutely. I'll ask the DOE's legal counsel to explain what the documentation is that was requested. Absolutely. You were going to say. And I will, and I just want to also point out that plaintiff has not mentioned at all and doesn't seem to be pursuing a claim about the evaluations, which of course are not an adverse action. Thank you, Your Honor. Thank you. Let me, let me try in two minutes to explain the situation a little more clearly from what plaintiff's perspective. Because the Lodi was denied on June 4th and the school year lasts until the end of June, my client was not covered in that period of time. She would not, she would not have been paid for that time by dint of the denial of the Lodi. Because of that, she used, what are these, car days. She had 42 car days. She used the car days in that period. She exhausted accruals. Those accruals were not replaced. Excuse me. Could you say that again? She exhausted, I'm sorry, Judge. She exhausted accruals, which are called CAR, C-A-R. Those accruals were not reinstated to her and she would not have used those accruals but for the denial of the Lodi on June 4th. Car accruals. Are they the days that she took out? Yeah. Those are personal, the days you accumulate by dint of your employment. You just said the days were replaced. They were not replaced. Okay. That's, that's why I'm speaking because I'm trying to correct the record. They were not replaced. That's number one. Now, there's another issue here. She says that the additional material was required. The principal's position, which is stated in e-mails, was that he was not going to recognize the Lodi from the period of May 14th, which is the day she started out, until this day of June 4th, which is the day the submission came in. That's by the time she saw the doctor and the doctor made the representation of her injury. Even though on June 4th the doctor certified that the injury had occurred and was operative starting May 14th. That was available information on June 4th. There was no other obligation upon her in order to get Lodi. That's line of duty injury. Was there a particular form? No. She submitted that form. That's what I'm trying to explain. There was a form. There was a doctor's requirement certification. That was submitted. Well, the opposing counsel says that there were other papers that were due. Now, you tell us no. I would like to see two things. One, what were the papers that opposing counsel says were due and were not submitted? And if they're not there, then you're right. But if they are there, then you can answer why these are not relevant. And I would like to know whether anything that she had to use up during the period that she was not paid was replaced. Very well. Where in the briefs is that described? The car process? No, no, no, the unrestored days. I don't think that's specifically stated. I think what's stated is she had to use her accruals. I don't think the issue of whether they were restored or not was related in the briefs. I don't believe it's discussed in the briefs. I think the idea was she used her days. There was no claim that they were restored. This is the first time I'm hearing they were restored. It's like when you use your accruals, you use your accruals. There was no issue below, as I remember it, that they were restored. I read that they were. But anyway, I have from the appendix the things that she needed to supply, an employee written statement and a completed comprehensive injury report. Right. And she, and on August 6th, the principal informed Moschetti that her leave had been denied for failure to submit those pieces of information. And that's false, and that's exactly the point. On June 4th, those were submitted. She never made an additional submission of those. They had been submitted. That's part of the argument here as to why Rodriguez was discriminating. Let me just put again what I think Judge Park said. Is it up to you in your complaint to show adverse action to say that things were taken which were not put back? That is, is that your responsibility, or is it enough to say that these CAR were used? Is it up to you to tell us that the CARs, when they are used, are not put back? I don't know. I don't. I mean, honestly, I don't understand why it would be. I mean, it may well be. If you used it. It's up to you to show, to bring in evidence of adverse action. And I don't know what that, I'll have to think about that. I agree with you. But if you have accruals, and the accruals, if you have Lodi, you don't have to use your accruals. And if you don't have Lodi, you have to use your accruals. And you use your accruals. I mean, what accruals are is something that you exhaust. I mean, it's definitional. So when you say you have to plead that we didn't get restored, if they were restored, they can come back and say they were restored, which I don't believe they did. But we'll, as you say, we'll have supplemental submissions and we'll get to the bottom of it. Let's talk about what we want. Within five calendar days from today, I would like to hear from both the city and from the plaintiffs. Oh, from both the city and the plaintiff, whether the days, what you call accruals, I'm calling days. Is that correct? Yes. They represent days. Were the days were restored to her account of days that she could use. And also, can we have a definitive discussion of what she had to supply and whether, in fact, or when, in fact, she supplied everything needed for the sick leave? Yes, Your Honor. Thank you. Okay. Five days. Thank you. I appreciate it. Interesting argument. We'll reserve decision, obviously.